**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MSW MEDIA, INC.,                    *
                                    *
    Plaintiff,                    *
                                    *
    v.                            *        Civil Action No. 1:25-cv-02518 (BAH)
                                    *
DEPARTMENT OF JUSTICE,              *
                                    *
    Defendant.                    *
                                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff respectfully moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff regarding Count 1 of the First Amended Complaint on the grounds that no genuine issue as to any material fact exists and Plaintiff is entitled to judgment as a matter of law.

In support of this Motion, the Court is respectfully referred to Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment and Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute.

Date:   September 17, 2025

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org
*Counsel for Plaintiff*

</div>

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

| | | |
|---|---|---|
| MSW MEDIA, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-02518 (BAH) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<div align="center">

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

</div>

Plaintiff MSW Media, Inc. ("MSW Media") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of Federal Bureau of Investigation ("FBI") training materials pertaining to the review of records about Jeffrey Epstein ("Epstein"). (1st Am. Compl., Dkt. #7, ¶¶ 25-30 (filed Sept. 4, 2025).) After MSW Media cited the widespread media interest in the information contained in these records as a compelling need for its request to be expedited (FOIA Request at 2, attached as Ex. A), FBI failed to issue a determination regarding MSW Media's request for expedited processing. Even now, *two months* after receiving this request—and forty-five days after the filing of this case—FBI *still* has not issued a determination and continues to drag its heels. For the reasons demonstrated herein, the Court should grant summary judgment to MSW Media on Count 1 and order FBI to process its FOIA request in an expedited fashion.

<div align="center">

**ARGUMENT**

</div>

FOIA directs agencies to provide expedited processing of requests for records in cases in which the requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). "An agency

shall process as soon as practicable any request for records to which the agency has granted

expedited processing[.]" *Id.* § 552(a)(6)(E)(iii). FOIA defines "compelling need" as, in part:

"[W]ith respect to a request made by a person primarily engaged in disseminating information,

urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* §

552(a)(6)(E)(v)(II). Department of Justice ("DOJ") FOIA regulations also provide for expedited

processing of requests involving "[a] matter of widespread and exceptional media interest in

which there exist possible questions about the government's integrity which affect public

confidence." 28 C.F.R. § 16.5(e)(1)(iv).[1]

> MSW Media included the following text in its request:

> MSW Media (https://mswmedia.com/) operates numerous podcasts and blogs
> about federal government operations, including Mueller She Wrote, SpyTalk, Daily
> Beans, and Jack. It will clearly use its editorial skills to translate disclosed records
> into new material. Given the intense public and media interest in both the Epstein
> files themselves and the steps taken by FBI to review them, see e.g.
> https://www.nbcnews.com/politics/congress/fbi-personnel-jeffrey-epstein-files-
> mentioning-trump-dick-durbin-says-rcna219699, these videos will significantly
> increase public understanding of government operations. . . .

> The ongoing story of how FBI and DOJ reviewed the Epstein records is one of the
> most newsworthy and fast-developing topics in the news today. MSW Media has a
> pressing need to report on these videos and shed light on FBI's role in this matter,
> which raises significant questions of government misconduct.

(Ex. A at 2.)[2] This language, while brief, easily meets the standard for expedited processing.

---

[1] This provision is incorporated into FOIA by way of the provision authorizing expedited
processing "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II).

[2] The undersigned further certified by email on 31 July 2025 that "under penalty of perjury[,] . . .
the statements I made in support of expedited processing were true and accurate for Request
1675664-000."

I.      **MSW MEDIA DEMONSTRATED A COMPELLING NEED UNDER THE FIRST TEST**

As noted above, FOIA defines "compelling need" in part as: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). To demonstrate MSW Media's "compelling need," this analysis will parallel the language in the statute.

A.      **"A person primarily engaged in disseminating information"**

It is generally understood that news media requesters are presumed to satisfy this requirement. *See* 28 C.F.R. § 16.5(e)(3) ("[U]nder paragraph (e)(1)(ii) of this section, a requester *who is not a full-time member of the news media* must establish that the requester is a person whose primary professional activity or occupation is information dissemination, though it need not be the requester's sole occupation.") (emphasis added). Given that FBI has unilaterally reclassified MSW Media as a representative of the news media (Ltr. from Troiani to McClanahan of 9/5/25, attached as Ex. B), it cannot plausibly argue that MSW Media is not primarily engaged in disseminating information. This criterion is accordingly beyond dispute.

B.      **"Urgency to inform the public"**

The D.C. Circuit established a three-part test for determining the existence of the "urgency to inform the public" being claimed herein. *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001). Under that test, the considerations for the Court are:

1.      "whether the request concerns a matter of current exigency to the American public;"

2.      "whether the consequences of delaying a response would compromise a significant recognized interest;" and

3

3.      "whether the request concerns federal government activity." *Id.* at 310.

However, courts do not always strictly apply this test, often electing to treat the idea of an "urgency to inform the public" as a more holistic concept, roughly equivalent to whether the material is of "extraordinary public interest" (*Natural Res. Def. Council v. DOE*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002)); a "breaking news story" (*ACLU of N. Cal. v. DOD*, No. 06-1698, 2006 U.S. Dist. LEXIS 36888, at *18 (N.D. Cal. May 25, 2006)); or "newsworthy [and] the subject of an ongoing national debate" (*Gerstein v. CIA*, No. 06-4643, 2006 U.S. Dist. LEXIS 89847, at *18-19 (N.D. Cal. Nov. 29, 2006)).

In *Natural Resources Defense Council*, the court ordered expedited processing of a request for documents concerning energy policy and President Bush's Energy Task Force, concluding that the request concerned material of "extraordinary public interest." 191 F. Supp. 2d at 43. The court reached this decision primarily by way of noting that the September 11, 2001, terrorist attacks, the secrecy involved in the activities of the activities of the task force, and Congressional interest in the task force demonstrated enormous public concern. *Id.* at 43-44.

In *ACLU of Northern California*, the court ordered expedited processing of a request for records concerning the TALON program involving surveillance of peaceful protests, rejecting the government's argument that it was no longer a breaking news story because it had already been covered in the press. On that issue, the court held that "a breaking news story is one that conveys information the public wants quickly. If the story would lose value if it were delayed, it is a breaking news story." 2006 U.S. Dist. LEXIS at *18. The court pointed out that already existing coverage would "eliminate urgency only if *all* major news on the TALON program had been reported, *i.e.*, if there were nothing more to say. . . . If anything, extensive media interest

usually is a fact *supporting* not *negating* urgency in the processing of FOIA request[s]." *Id.* at *21-22.

Relying on *ACLU of Northern California*, the court ordered expedited processing in *Gerstein v. CIA* of a request for records concerning "the government's ongoing efforts to address leaks of classified information." *Id.* at *18. Regarding this request, the court found that the information "[was] not only newsworthy, but was the subject of an ongoing national debate at the time [Gerstein] made his FOIA requests." *Id.* at *18-19. The fact that Congress had been considering legislation on the issue at the time of the request also persuaded the court of the need for expedition.

Taken together, all of the above cases recognize a clear relationship between the criteria set forth in *Al-Fayed* and the underlying concept of public interest, generally expressed in terms of media interest and/or Congressional interest in the information in question. Viewed through that lens, it is clear to see how records about the review process applied to highly controversial FBI files concern a matter of "current exigency to the American public."

It is of particular note that as MSW Media is drafting this brief, the Senate and House Judiciary Committees have just held two days of hearings with FBI Director Kash Patel, in which: (a) various Representatives addressed the Epstein files at least sixty times; (b) various Senators addressed the Epstein files at least thirty times; (c) Epstein's name was mentioned 175 times in total; and, most relevantly (d) various Representatives and Senators specifically addressed FBI's review of the Epstein files—the exact subject of this FOIA request— approximately *seventy times*. Ranking Member Durbin even took time during his opening statement to tee up the issue: "[A]fter Attorney General Bondi publicly stated in February that the Epstein client list was quote sitting on my desk right now to review, that's what she said on

Fox, Director Patel diverted more than a thousand FBI personnel from their critical missions to work on 24-hour shifts reviewing over 100,000 pages of Epstein-related records. These personnel were instructed to flag any records in which President Trump was named, but that review ended in an unsigned memorandum from DOJ and FBI stating simply, 'There is no incriminating client list.' Close quote. Director Patel still has not responded to my letter from two months ago asking about his role in this coverup." MSNBC, *FULL TESTIMONY: Kash Patel faces intense pressure from Senate* at 19:08-19:55 (Sept. 16, 2025), *at* https://www.youtube.com/watch?v=XZHGGEp5wQI (last accessed Sept. 17, 2025). *See also* ABC News, *LIVE: FBI Director Patel testifies before House committee at oversight hearing* (Sept. 17, 2025), *at* https://www.youtube.com/live/hUKvhAqPOEk (last accessed Sept. 17, 2025).

Moreover, it is highly relevant that FBI and DOJ—as well as the White House—have levied several accusations at those who seek the release of the Epstein files (including Epstein's victims and members of Epstein's estate), alleging that the Epstein matter is a "SCAM, perpetuated by the Democrats." Donald J. Trump (@realDonaldTrump), Truth Social (July 17, 2025 9:07 PM), *at* https://truthsocial.com/@realDonaldTrump/posts/114871557460531003 (last accessed Aug. 1, 2025). Information which could demonstrate the relative truth or falsity of those allegations would clearly be "central to a pressing issue of the day," *Wadelton v Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013). "In particular, if production is unduly delayed, both [MSW Media] and the public at large will be 'precluded . . . from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of' a high-profile government action." *Protect Democracy Proj. v. DOD*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (quoting *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006)). In other

words, "the requested documents are sought in order to inform the public on a matter of extreme national concern. Only an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions." *Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019).

### C.    "Concerning actual or alleged Federal Government activity"

As a court in the Southern District of New York once held, "The use of the word 'concerning' in this context is significant because it does not suggest an exclusive or definitive source of the information that might shed light on the relevant government activity. Instead, the word 'concerning' in its ordinary meaning is much more broadly understood. Its definition is 'relating to; to be about; to bear on.'" *Bloomberg, L.P. v. FDA*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com). As with "an individual primarily engaged in disseminating information" above, the applicability of this criterion to MSW Media's request is plain on its face—all records requested deal expressly with the U.S. Government's actions and/or alleged actions. This criterion is similarly beyond dispute.

## II.    ROLLING STONE DEMONSTRATED A COMPELLING NEED UNDER THE SECOND TEST

As noted above, DOJ FOIA regulations also define "compelling need" in part as applying in cases involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Since MSW Media has already demonstrated how this request concerns a "matter of widespread and exceptional media interest," it will limit this discussion to the second criterion.

It cannot be disputed that Epstein was, to put it mildly, a highly controversial figure in the United States, and in fact the world. Then-candidate Donald Trump ("Trump") included releasing records about Epstein in his campaign promises, with the support of high-visibility Republican influencers such as Patel and Pamela Bondi ("Bondi"). For instance, on 3 January 2024, Bondi told Fox News, "[I]f people in th[ose records] are still fighting to keep their names private, . . . they have no legal basis to do so, unless they're a child, a victim, or a cooperating defendant." *These documents should have come out a long time ago: Pam Bondi*, Fox News (Jan. 3, 2024), *at* https://www.foxnews.com/video/6344240670112 (last accessed Aug. 1, 2025). This emphasis on transparency continued after Trump was elected President. During Patel's Senate confirmation hearing, Senator Marsha Blackburn asked him, "I know that breaking up these trafficking rings is important to President Trump, so will you work with me on this issue so we know who worked with Jeffrey Epstein in building these sex trafficking rings?" Patel responded, "Absolutely, Senator. Child sex trafficking has no place in the United States of America, and I will do everything if confirmed as FBI Director to make sure the American public knows the full weight of what happened in the past and how we're going to countermand missing children and exploited children going forward." https://www.c-span.org/clip/senate-committee/user-clip-cut-15-patel-confirmation/5155752 (last accessed Aug. 1, 2025).

Then, after being confirmed as Attorney General, Bondi publicly released approximately 200 pages of documents about Epstein on 27 February 2025, calling it the "first phase" and stating, "The Department remains committed to transparency and intends to release the remaining documents upon review and redaction to protect the identities of Epstein's victims." *Attorney General Pamela Bondi Releases First Phase of Declassified Epstein Files* (Feb. 27, 2025), *at* https://www.justice.gov/opa/pr/attorney-general-pamela-bondi-releases-first-phase-

declassified-epstein-files (last accessed Aug. 1, 2025). In March 2025, hundreds of FBI

employees, including special agents from the Washington, DC, and New York field offices,

began working around the clock to review all of the records about Epstein for release. Jason

Leopold, *FBI Agents, FOIA Staff Pulling All Nighters Reviewing Jeffrey Epstein Files*,

Bloomberg (Mar. 28, 2025), *at* https://www.bloomberg.com/news/newsletters/2025-03-28/fbi-

agents-foia-staff-pulling-all-nighters-reviewing-jeffrey-epstein-files (last accessed Aug. 1, 2025).

FBI reviewers "were instructed to search for and review every single Epstein-related document

and determine what could be released. That included a mountain of material accumulated by the

FBI over nearly two decades, including grand jury testimony, prosecutors' case files, as well as

tens of thousands of pages of the bureau's own investigative files on Epstein. It was a herculean

task that involved as many as 1,000 FBI agents and other personnel pulling all-nighters while

poring through more than 100,000 documents." Jason Leopold, *The FBI Redacted Trump's

Name in the Epstein Files*, Bloomberg (Aug. 1, 2025), *at*

https://www.bloomberg.com/news/newsletters/2025-08-01/epstein-files-trump-s-name-was-

redacted-by-the-fbi (last accessed Aug. 1, 2025) [hereinafter *FBI Redacted Trump's Name*]. To

aid reviewers, FBI created "training videos instructing personnel on the process of tagging

mentions of Trump," which "were actually embedded in a PowerPoint deck (or decks) that lived

on the shared drive." Allison Gill, *EXCLUSIVE: The Universe of Those with Access to the

Epstein Files Keeps Expanding*, The Breakdown (July 22, 2025), *at*

https://www.muellershewrote.com/p/exclusive-the-universe-of-those-with (last accessed Aug. 1,

2025).

   Then, after having stoked widespread national interest for over a year in the Epstein files,

DOJ and FBI released an unsigned joint statement on 8 July 2025 stating that FBI had collected

and reviewed more than 300 gigabytes of data and physical evidence related to the Epstein investigation, but that "it is the determination of the Department of Justice and the Federal Bureau of Investigation that no further disclosure would be appropriate or warranted." *FBI Redacted Trump's Name*. This abrupt reversal has driven numerous political figures—both Democratic and Republican—to demand explanations from DOJ and FBI, while, as noted above, those agencies and the White House are publicly calling the whole controversy "merely another Democrat hoax." Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 5, 2025 9:56 AM), *at* https://truthsocial.com/@realDonaldTrump/posts/115152031890524220 (last accessed Sept. 17, 2025).The Congressional hearings with Patel over the last two days have been simply the latest example of the overwhelming prevalence of "questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Since, according to DOJ regulations, the questions do not have to be *universal*, just *possible*, the Court's choice is clear. When a significant percentage of the American people are questioning whether DOJ and FBI are covering up for a notorious child sex trafficker, there can fairly be said to be possible questions about the Government's integrity which affect public confidence.

## III. THE QUESTION OF EXPEDITED PROCESSING CANNOT BE RENDERED MOOT BY MOVING MSW MEDIA'S REQUEST TO THE TOP OF THE QUEUE

Between now and 17 October 2025, when FBI's opposition to this Motion is due, FBI may decide to move MSW Media's request to the top of its first-in, first-out queue without granting its request for expedited processing. If it does so, it can reasonably be expected to argue that this renders this Motion moot, as it has in comparable cases. In anticipation of this potential argument, MSW Media will briefly explain how that is not the standard for judicial review of expedited processing denials, and how nothing short of a formal grant of expedited processing will moot this question.

FOIA states that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). However, the operative term in this provision is "complete." As this Court held twelve years ago:

> [T]he only scenario in which a court can properly grant relief to a FOIA requester "on the merits" of an expedited processing claim is when an agency has not yet provided a final substantive response to the individual's request for records. After that point, the timing of any further processing of an individual's request (either expeditiously or otherwise) necessarily occurs at the direction of the court—pursuant to a scheduling order, not the expedited processing provision of the FOIA. For this reason, the Court construes the phrase "complete response" in 5 U.S.C. § 552(a)(6)(E)(iv) to mean a final determination under § 552(a)(6)(A), i.e., a final administrative determination whether to release any records that are responsive to the individual's request.

*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).

The reason for this distinction is self-apparent. FOIA requires agencies to process requests which warrant expedited processing "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii); it does not require them to move them to the top of their queue and then process them at their leisure. Were FBI allowed to claim that the question of expedited processing was moot once the request has been moved to the top of the queue, it would render the "as soon as practicable" language—not to mention the word "complete"—"insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 167 (2001). Such a reading violates one of the central canons of statutory construction: "This Court's duty to give effect, where possible, to every word of a statute makes the Court reluctant to treat statutory terms as surplusage." *Id.* (citing *United States v. Menasche,* 348 U.S. 528, 538-539 (1955)). Simply put, when a FOIA request is found to warrant expedited processing, the agency may not simply move it to the top of the queue and then proceed as though the request is no different from any other request. It must conduct searches in an expedited manner. It must review responsive records in

an expedited manner. It must direct any agencies to which it refers requests to review the referred records in an expedited manner. And it must release records in an expedited manner. Accordingly, absent a court order, MSW Media's request for expedited processing will remain a valid issue in controversy until either: (a) FBI unilaterally grants its request for expedited processing; or (b) all processing of all responsive records is complete.

## **CONCLUSION**

MSW Media has demonstrated that it has a compelling need to be granted expedited processing for its FOIA request. For the reasons described above, MSW Media is entitled to partial summary judgment on Count 1 and an order directing FBI to process its request as soon as practicable.

Date:   September 17, 2025

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MSW MEDIA, INC.,                          *
                                          *
     Plaintiff,                         *
                                          *
     v.                                 *     Civil Action No. 1:25-cv-02518 (BAH)
                                          *
DEPARTMENT OF JUSTICE,                    *
                                          *
     Defendant.                         *
                                          *
*   *   *   *   *   *   *   *   *   *   *   *   *

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Plaintiff MSW Media, Inc. ("MSW Media") submits this Statement of Material Facts As To Which There Is No Genuine Dispute.

1.     On 22 July 2025, MSW Media submitted to the Federal Bureau of Investigation ("FBI") a Freedom of Information Act ("FOIA") for "all videos stored on Sharepoint (on the unclassified side) or Sharepoint or BuTube (on the classified side) which were created or used to train FBI personnel in how to review records about Jeffrey Epstein." (FOIA Request, attached as Ex. A.)

2.     MSW Media requested expedited processing of this request. (*Id*.)

3.     FBI has not made a determination regarding MSW Media's request for expedited processing.

4.     FBI has classified MSW Media as a representative of the news media. (Ltr. from Troiani to McClanahan of 9/5/25, attached as Ex. B.)

Date:   September 17, 2025

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*