**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MSW Media, Inc.,<br>Plaintiff,<br>v.<br>U.S. DEPARTMENT OF JUSTICE,<br>Defendant. | No. 1:25-cv-2518-BAH |

**JOINT STATUS REPORT**

Pursuant to this Court's August 7, 2026, Minute Order the parties file this joint status report and state as follows:

1. Plaintiff filed suit on August 2, 2025, seeking to compel the production of records it sought in a July 17, 2025, request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of Justice ("DOJ"), Office of Information and Policy ("OIP") for "all grand jury testimony in the criminal cases against Jeffrey Epstein and Ghislaine Maxwell," Compl. ¶ 18, ECF No. 1, and a July 22, 2025, FOIA request to the Federal Bureau of Investigation ("FBI"), for "all videos stored on Sharepoint (on the unclassified side) or Sharepoint or BuTube (on the classified side) which were created or used to train FBI personnel in how to review records about Jeffrey Epstein," *id*. ¶ 27.

2. Plaintiff requested expedited processing of each of its requests. *See id*. ¶¶ 19, 28. OIP denied Plaintiff's request, *see id*. ¶ 22, and the FBI had not yet provided a response to Plaintiff's request for expedited processing at the time Plaintiff filed its Complaint, *see id*. ¶ 31.

3. On September 4, 2025, Plaintiff filed an Amended Complaint withdrawing its FOIA request to OIP, *see* First Am. Compl. ¶ 22, ECF No. 7, but maintaining and expanding its

claims against FBI. *See id.*, Second through Fifth Causes of Action.

4. On June 30, 2026, the FBI completed its search for and review of records responsive to Plaintiff's FOIA request and provided a categorical denial to Plaintiff, explaining that it was withholding the records in full under FOIA Exemptions b(5), b(6), b(7)(C), and b(7)(E).

5. On August 7, 2026, this Court issued a Minute Order requiring the parties to file a joint status report.

**Plaintiff's Position:**

6. On December 7, 2025, Plaintiff's counsel sent the FBI's then-counsel the following email:

> In light of this article, https://www.bloomberg.com/news/newsletters/2025-11-25/epstein-files-new-fbi-emails-detail-review-special-redaction-project, we want to clarify that any and all training videos, even those embedded in Powerpoint decks, are responsive to this request, and that they may be identified as being part of the "Epstein Transparency Project" or "Special Redaction Project." And this includes both the original training videos and the "[u]pdated training materials and workflow guidance" mentioned in the 3/22 email released to Leopold.
>
> Furthermore, the scope of the request should incorporate a liberal reading of "how to review records." This is not limited to videos about redactions and withholdings. How to gain access to the records, how to mark them, how to prioritize them, how to manage the workflow, and the like are all covered by "how to review records."
>
> Because some of these records may not be easily searchable, we recommend contacting the FBI officials involved in sending and receiving the emails released to Leopold and asking them to identify records responsive to this request.

7. On December 8, 2025, the FBI's then-counsel replied, "Thank you very much I will pass this along."

8. On March 2, 2026, the FBI's then-counsel forwarded the above email thread to the FBI's current counsel.

9. On August 20, 2026, the FBI's counsel advised Plaintiff's counsel, in the course of discussing this Status Report, that the records responsive to this request consisted of "a number of video files that have a combined length of one hour, 13 minutes, and 14 seconds."

10. When Plaintiff's counsel questioned this statement, explaining that, because the request encompassed Powerpoint decks, the FBI should not have located only videos, the FBI's counsel quoted the original request language and appeared unfamiliar with the scope clarification allegedly "pass[ed] . . . along" to the FBI in December and forwarded to him in March.

11. After Plaintiff's counsel asked the FBI's counsel to explain this discrepancy, drawing his attention to the March 2, 2026 email thread, and the FBI's counsel replied, "The FBI determined that that Plaintiff's December 2025 email was improperly attempting to expand the scope of its original FOIA request in the course of litigation, *see, e.g.*, *Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017), and thus did not consider it in conducting its search for records responsive to Plaintiff's original request."

12. At no point in the last eight months did the FBI advise Plaintiff or his counsel that it was refusing to accept the December 2025 email.

13. Contrary to the interpretation cited by the FBI below, the case law prohibiting modification of a FOIA request during litigation is limited to cases in which the agency has already performed a search. This is why, for instance, the D.C. Circuit stated that agencies have no "obligation to search *anew* based upon a *subsequent* clarification." *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (emphasis added). The case law expressly does not say that agencies have no obligation to incorporate a clarification received *before* it performed a search into its *first* search. The FBI has not—and Plaintiff believes, cannot—demonstrated that it performed the first search for responsive records before December 7, 2025.

14. In light of the fact that the FBI waited eight months—and, given its way, would have waited three more—to even suggest that it was refusing to honor Plaintiff's instructions, the Court should require it to file its motion for summary judgment within thirty days, so that the matter can be quickly resolved and the agency can be required to perform a new search as soon as possible, before the responsive records are destroyed as temporary files.

15. It should not take the agency three months to draft a declaration defending a categorical, non-particularized withholding of 75 minutes of video footage, especially when the FBI has already been required to disclose the records by statute. *See* Epstein Files Transparency Act, Pub. L. 199-38, § 2(a)(8) (requiring publication of "all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to: . . . All communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files").

16. The passage of the Epstein Files Transparency Act demonstrates that Congress considered the immediate release of these records to be in the public interest. *See id.* § 2(a) (requiring that records be released within thirty days of November 19, 2025). The FBI cannot be allowed to delay even *defending* its withholding of these records for three more months solely due to the routine and predictable litigation pressures faced by any large agency's FOIA office. None of the increase described in the FBI's position statement was unexpected, and the FBI has consistently failed to increase the size of its FOIA office for numerous years to account for the steady increase in FOIA requests and litigation.

17. If the Court accepts the FBI's proposed briefing schedule, the FBI will not even

publicly *identify* the records it was required to *release* within thirty days of the Epstein Files Transparency Act's enactment until more than a year has passed since the law was passed.

18. Contrary to the FBI's framing, Plaintiff is not arguing the adequacy of the search at this time, and it is not premature to simply draw the Court's attention to the fact that the FBI refused for eight months to notify Plaintiff of its intention not to honor the December 2025 email. Had the FBI's previous counsel advised Plaintiff of this fact after stating that he had passed along the instructions, or had FBI's current counsel advised Plaintiff of this fact after he was visibly informed of the email chain, Plaintiff would have filed a motion for partial summary judgment, as the FBI blithely suggests below, *at that time* to ensure that the FBI could not continue to delay conducting an adequate search. Instead, the FBI chose to hide this fact and imply that it was properly considering the December 2025 email. It is entirely appropriate for the Court to consider the dilatory conduct of a party seeking a lengthy briefing schedule.

19. The Court should accordingly order the FBI to file a motion for summary judgment within thirty days of the date of its order.

**Defendant's Position:**

20. Plaintiff's challenge to the adequacy of Defendant's search in this joint status report is premature. FOIA litigation, including challenges to the adequacy of the agency's search, is typically resolved on cross motions for summary judgment. *See, e.g., Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). In any event, Defendant "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). Nor does Defendant have "an obligation to search anew based upon a subsequent clarification [from the requester]." *Id.* at 388. And Plaintiff certainly cannot expand the scope of its original FOIA request in the course of litigation, which is exactly what it

tried to do here. *See, e.g., Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017); *Donoghue v. DOJ*, 157 F. Supp. 3d 21, 23 n.2 (D.D.C. 2016); *Coss v. DOJ*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015). Thus, to the extent that Plaintiff challenges the adequacy of Defendant's search, it should do so in a motion for summary judgment.[1]

21. For the reasons set out below, in order to give Defendant adequate time to prepare its declaration and other supporting documents for its motion for summary judgment, Defendant proposes the following briefing schedule:

a. Defendant file its motion for summary judgment by November 23, 2026;

b. Plaintiff file its combined cross motion for summary judgment and opposition to Defendant's motion for summary judgment by December 23, 2026;

c. Defendant file its combined reply in support of its motion for summary judgment and opposition to Plaintiff's cross motion for summary judgment by January 15, 2027; and

d. Plaintiff file its reply in support of its cross motion for summary judgment by February 5, 2027.

22. Operationally, the FBI has one of the largest and most complex FOIPA ("FOIA and Privacy Act") programs in the federal government, reviewing approximately 1.3 million pages annually for dissemination to the public. Despite these best efforts, the FBI's FOIPA program cannot keep pace with the increasing public demand for FBI records accompanied by

---

[1] Undersigned counsel for Defendant has exchanged multiple emails with counsel for Plaintiff in preparation for this report and has, as a matter of professional courtesy, conveyed each of Plaintiff's questions to the FBI, and has conveyed each of the FBI's responses back to Plaintiff. The FOIA, however, does not require an agency to answer questions presented in the guise of a FOIA request. *See, e.g., Schoenman v. FBI*, 573 F. Supp. 2d 119, 140 (D.D.C. 2008).

more FOIPA litigations for these records.

23. Currently, the FBI employs 220 Government Information Specialists ("GIS"), with support from 85 contractors, to process requests for FBI information under the FOIA and Privacy Acts and conduct classification and declassification reviews, inter alia. This staff is assigned to multiple units, only one of which assists the FBI Office of the General Counsel's FOIPA Litigation Unit in handling all FOIPA lawsuits against the FBI or involving FBI records and information. These individuals review, research, and justify the FBI's response to FOIPA requests in all FOIPA matters in litigation, and prepare detailed declarations and *Vaughn* indices to support motions for summary judgment. This team currently has over 50 litigation products (declarations and *Vaughn* indices) due in the next 90 days.

24. The FBI FOIPA program has experienced overall sustained growth in the volume of incoming FOIPA requests and litigation cases from fiscal year 2021 to present. Notably, in Fiscal Year ("FY") 2026, with over a month remaining, the FBI has received its highest number of requests ever—over 60,000 FOIPA requests thus far. When compared to the 29,829 FOIPA requests received in FY 2021, this represents more than an 85% increase in requests from FY 2021. This sustained growth solidifies the high public demand for access to FBI records. The FBI has also experienced over a 33% growth in the volume of FOIPA litigation cases over the last six years (from 388 pending FOIPA Civil Action cases in FY 2021 to 518 pending cases as of June 18, 2026). FOIPA requests in litigation for FY 2026 now consume nearly 54% of all monthly production to the public, significantly impacting the FBI's ability to equitably and timely respond to all requesters. Simply put, the imbalance of time and resources serving requesters who litigate versus non-litigant requesters is not sustainable.

25. Despite the steady increase in workload, however, funded staffing levels have

decreased since FY 2021 with a 9.3 % decrease over the last six Fiscal Years. The FBI submitted budget enhancement requests to supplement FOIPA staffing in FYs 2024, 2025, and 2026 to address its FOIPA staffing gap; however, none of the enhancement requests have been funded.

26. The FBI takes its FOIPA responsibilities seriously and strives to promote public trust through responsive, efficient program administration. All reasonable efforts are being made to timely process and satisfy both administrative and litigation requests, including Plaintiff's. The requested briefing schedule will allow the FBI the time necessary to thoroughly explain and justify its withholdings in this matter. Pushing other pre-existing litigation deadlines to suit the individual needs of this Plaintiff, or any of the thousands of other requesters seeking information from the FBI, disrupts the FBI's ability to process FOIPA requests in a manner that is most beneficial to requesters as a whole.

Dated: August 21, 2026

Respectfully submitted,

*s/ Kelly Brian McClanahan*
KELLY BRIAN MCCLANAHAN
D.C. Bar #984704
NATIONAL SECURITY COUNSELORS
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

Counsel for Plaintiff

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/ James D. Todd, Jr.*
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

Counsel for Defendant