UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MSW MEDIA, INC.,

Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

Defendant.

No. 1:25-cv-2518-BAH

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTRODUCTION ....... 1

BACKGROUND ....... 2

I. STATUTORY AND REGULATORY BACKGROUND ....... 2

II. FACTUAL AND PROCEDURAL BACKGROUND ....... 2

STANDARD OF REVIEW ....... 5

ARGUMENT ....... 6

I. THE FBI CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST ....... 6

A. The Adequacy of the FBI's Search Should Be Determined Based on Plaintiff's July 2025 Request and Not its December 2025 or August 2026 Emails ....... 7

1. An Agency's Search Obligations are Based on the FOIA Request's Plain Language Without Regard to Later Clarification Attempts ....... 7

2. Any Attempt to Expand the July 2025 Request is Not Properly Before the Court ....... 8

a. Plaintiff Lacks Standing to Seek Records Beyond the Scope of its July 2025 Request ....... 9

b. Any Claim of Entitlement to Records Beyond the Scope of Plaintiff's July 2025 Request Exceeds the Scope of the Amended Complaint and is Thus Beyond the Court's Jurisdiction ....... 10

c. Plaintiff Has Not Exhausted Its Administrative Remedies With Respect to Documents Not Sought in Its July 2025 Request ....... 11

d. In Processing Plaintiff's July 2025 Request, the FBI Reasonably Decided Not to Consider Plaintiff's December 2025 and August 2026 Emails ....... 12

B. The FBI's Search Was Reasonable ....... 13

II. RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST ARE PROPERLY PROTECTED UNDER EXEMPTION 5 ....... 14

III. RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST ARE PROPERLY WITHHELD UNDER EXEMPTION 6 AND 7 ....... 17

A. The Training Videos Were Created for Law Enforcement Purposes ....... 17

B. The FBI Properly Withheld Private Information Contained in the Videos Under Exemptions 6 and 7(C) ....................19

1. The FBI Properly Withheld Private Information About SAs and Professional Staff ....................21

2. The FBI Properly Withheld Private Information About Third Parties Who Were Merely Mentioned in Investigative Records ....................23

3. The FBI Properly Withheld Private Information About Third-Party Victims .......24

C. Records Responsive to MSW Media's FOIA Request Are Properly Withheld Under Exemption 7(E) ....................25

1. The FBI Properly Applied Exemption 7(E) to Withhold Internal Email Addresses, Non-Public Web Addresses, Computer Banner Lines, and Non-Public Telephone Numbers of FBI Personnel Identified in the Training Videos ....................26

2. The Agency Properly Applied Exemption 7(E) to Withhold Database Information and Search Results ....................27

IV. THE FBI ADEQUATELY EXPLAINED THE FORESEEABLE HARM THAT WOULD RESULT FROM DISCLOSURE OF THE WITHHELD INFORMATION ....................30

V. THE FBI PROPERLY CONCLUDED THAT NO PORTION OF THE RESPONSIVE RECORDS ARE REASONABLY SEGREGABLE ....................31

CONCLUSION ....................32

**TABLE OF AUTHORITIES**

**CASES**

*100Reporters v. U.S. Dep't of State*,
602 F. Supp. 3d 41 (D.D.C. 2022) ....................29, 30, 31

*Akel v. DOJ*,
No. 1:20-cv-3240 (RDM), 2024 WL 5359362 (D.D.C. Nov. 7, 2024),
*vacated & remanded by*, No. 25-5011, 2026 WL 1074084 (D.C. Cir. Apr. 16, 2026) .............14

*Am. Chemistry Council, Inc. v. HHS*,
953 F. Supp. 2d 120 (D.D.C. 2013) ....................14

*Am. Civil Liberties Union v. DOJ*,
655 F.3d 1 (D.C. Cir. 2011) ....................21

*Bartko v. DOJ*,
79 F. Supp. 3d 167 (D.D.C. 2015) ....................20

*Beck v. DOJ*,
997 F.2d 1489 (D.C. Cir. 1993) ....................19

*Bigwood v. DOD*,
132 F. Supp. 3d 124 (D.D.C. 2015) ....................6, 13

*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011)....................18, 24, 25

*Bonner v. U.S. Dep't of State*,
928 F.2d 1148 (D.C. Cir. 1991)....................13

*Boyd v. Exec. Off. for U.S. Att'ys*,
161 F. Supp. 3d 1 (D.D.C. 2015), *aff'd*,
No. 16-5133, 2016 WL 6237850 (D.C. Cir. Sept. 16, 2016) ....................19, 20

*Braga v. FBI*,
910 F. Supp. 2d 258 (D.D.C. 2012) ....................19, 23, 24, 25

*Brayton v. Off. of U.S. Trade Rep.*,
641 F.3d 521 (D.C. Cir. 2011)....................5

*Brown v. FBI*,
No. 1:21-cv-1639 (RBW), 2023 WL 5333210 (D.D.C. Aug. 18, 2023),
*aff'd,* 143 F.4th 481 (D.C. Cir. 2025) ....................29

*CACI Field Servs., Inc. v. United States*,
12 Cl. Ct. 680 (Cl. Ct. 1987)....................5

*Campbell v. DOJ*,
164 F.3d 20 (D.C. Cir. 1998) ....................18, 19

*Cato Inst. v. FBI*,
638 F. Supp. 3d 13 (D.D.C. 2022), *on remand*,
No. 20-3338, 2026 WL 2687271 (D.D.C. Sept. 14, 2026)....................14

*Citizens for Resp. & Ethics in Wash. v. DHS*,
525 F. Supp. 3d 181 (D.D.C. 2021) ....................30

*Cole v. Copan*,
No. 1:19-cv-1182 (TSC), 2020 WL 7042814 (D.D.C. Nov. 30, 2020) ....................32

*Coss v. DOJ*,
98 F. Supp. 3d 28 (D.D.C. 2015) ....................7

*Covington v. McLeod*,
No. 09-5336, 2010 WL 2930022 (D.C. Cir. July 18, 2010)....................................................32

*Cox v. DOJ*,
No. 1: 87-cv-158 (LFO), 1987 WL 25670 (D.D.C. Nov. 17, 1987) .........................................29

*Ctr. for Investigative Reporting v. CBP*,
436 F. Supp. 3d 90 (D.D.C. 2019) ...........................................................................................16

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976).....................................................................................................................20

*Dhakal v. FBI*,
No. 1:24-cv-2525 (TNM), 2026 WL 787865 (D.D.C. Mar. 20, 2026) ............................. *passim*

*Dillon v. DOJ*,
444 F. Supp. 3d 67 (D.D.C. 2020) .............................................................................................8

*DOD v. Fed. Lab. Rels. Auth.*,
510 U.S. 487 (1994)..............................................................................................20, 23, 24, 25

*DOJ v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989)....................................................................................................................20

*Donoghue v. Off. of Info. Policy, DOJ*,
157 F. Supp. 3d 21 (D.D.C. 2016) ...........................................................................................10

*Ecological Rts. Found. v. EPA*,
No. 1:19-cv-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021), *opinion vacated in part on reconsideration on other grounds*, 541 F. Supp. 3d 34 (D.D.C. 2021)..................................7

*Elec. Priv. Info. Ctr. v. DHS*,
777 F.3d 518 (D.C. Cir. 2015) ...........................................................................................17, 18

*Evans v. BOP*,
951 F.3d 578 (D.C. Cir. 2020) ....................................................................................................7

*Ezeah v. FBI*,
No. 1:24-cv-76 (TNM), 2025 WL 2377964 (D.D.C. Aug. 15, 2025).......................................31

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024), *on remand* 117 F.4th 336 (5th Cir. 2024) .................................................9

*Formaldehyde Inst. v. HHS*,
889 F.2d 1118 (D.C. Cir. 1989)..................................................................................................15

*Freeman v. FBI*,
No. 1:18-cv-2769 (RBW), 2022 WL 4365734 (D.D.C. Sept. 21, 2022) ..................................28

*Gilliam v. DOJ*,
128 F. Supp. 3d 134 (D.D.C. 2015) ....................5

*Hidalgo v. FBI*,
344 F.3d 1256 (D.C. Cir. 2003) ....................11, 12

*Houser v. Church*,
271 F. Supp. 3d 197 (D.D.C. 2017) ....................8

*Human Rts. Def. Ctr. v. U.S. Park Police*,
126 F.4th 708 (D.C. Cir. 2025) ....................31

*Jimenez v. FBI*,
938 F. Supp. 21 (D.D.C. 1996) ....................19

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989)....................6

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002) ....................6

*Jordan v. DEA*,
No. 1:22-cv-2195 (JEB), 2023 WL 2809132 (D.D.C. Apr. 6, 2023)....................8

*Jud. Watch, Inc. v. DOJ*,
365 F.3d 1108 (D.C. Cir. 2004)....................15

*Judicial Watch, Inc. v. DOD*,
715 F.3d 937 (D.C. Cir. 2013) ....................5

*King v. DOJ*,
830 F.2d 210 (D.C. Cir. 1987) ....................20

*Kowalczyk v. DOJ*,
73 F.3d 386 (D.C. Cir. 1996) ....................7, 8, 12, 13

*Light v. DOJ*,
968 F. Supp. 2d 11 (D.D.C. 2013) ....................5, 12

*Loving v. DOD*,
550 F.3d 32 (D.C. Cir. 2008) ....................32

*Machado Amadis v. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ....................16

*Malloy v. DOJ*,
457 F. Supp. 543 (D.D.C. 1978) ....................29

*Mayer Brown LLP v. IRS*,
562 F.3d 1190 (D.C. Cir. 2009)....................18, 26

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977)....................32

*Military Audit Project v. Casey*,
656 F.2d 724 (1981)....................5

*Miller v. Casey*,
730 F.2d 773 (D.C. Cir. 1984)....................7, 8

*Milner v. Dep't of the Navy*,
562 U.S. 562 (2011)....................17

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989)....................1, 23, 24, 25

*Nat'l Pub. Radio, Inc. v. FBI*,
539 F. Supp. 3d 1 (D.D.C. 2021)....................32

*Parker v. U.S. DOJ Exec. Off. for U.S. Attorneys*,
78 F. Supp. 3d 238 (D.D.C. 2015)....................15

*Parker v. U.S. Immigr. & Customs Enf't*,
238 F. Supp. 3d 89 (D.D.C. 2017)....................28

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982)....................6, 13

*PHE, Inc. v. DOJ*,
983 F.2d 248 (D.C. Cir. 1993)....................26

*Pray v. DOJ*,
902 F. Supp. 1 (D.D.C. 1995), *aff'd in part, rev'd in part on other grounds*,
No. 95-5383, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996)....................23

*Prisology, Inc. v. BOP*,
852 F.3d 1114 (D.C. Cir. 2017)....................9, 10

*Public Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mexico*,
740 F.3d 195 (D.C. Cir. 2014)....................17, 18, 26, 29

*Reps. Comm. for Freedom of the Press v. CBP*,
567 F. Supp. 3d 97 (D.D.C. 2021)....................16, 30

*Rockwell Int'l Corp. v. DOJ*,
235 F.3d 598 (D.C. Cir. 2001)....................14, 15

*Rojas-Vega v. U. S. Immigr. & Customs Enf't*,
302 F. Supp. 3d 300 (D.D.C. 2018) ....................................................................................28

*Rosenberg v. DOD*,
342 F. Supp. 3d 62 (D.D.C. 2018) ......................................................................................5

*Sack v. DOD*,
823 F.3d 687 (D.C. Cir. 2016) .....................................................................................17, 18

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991)...........................................................................5, 20, 24, 25

*Sai v. TSA*,
54 F. Supp. 3d 5 (D.D.C. 2014) ....................................................................................10, 11

*Sargeant v. Dixon*,
130 F.3d 1067 (D.C. Cir. 1997) .....................................................................................9, 10

*Schrecker v. DOJ*,
349 F.3d 657 (D.C. Cir. 2003) ........................................................................................ *passim*

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*,
823 F.2d 574 (D.C. Cir. 1987) .....................................................................................22, 24

*Shannahan v. IRS*,
No. 08-cv-452, 2009 WL 4051078 (W.D. Wash. Sept. 3, 2009) ...............................................5

*Spannaus v. CIA*,
841 F. Supp. 14 (D.D.C. 1993) ........................................................................................14

*Spears v. DOJ*,
139 F. Supp. 3d 79 (D.D.C. 2015) ....................................................................................11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................................9

*Steinberg v. DOJ*,
23 F.3d 548 (D.C. Cir. 1994) .....................................................................................6, 12, 14

*Stern v. FBI*,
737 F.2d 84 (D.C. Cir. 1984) ..........................................................................................20

*Stone v. U.S. Dep't of State*,
No. 1:21-cv-3244 (RC), 2026 WL 861064 (D.D.C. Mar. 30, 2026)...................................10, 11

*Sussman v. U.S. Marshalls Serv.*,
494 F.3d 1106 (D.C. Cir. 2007)..........................................................................................32

*Tax Analysts v. IRS*,
117 F.3d 607 (D.C. Cir. 1997)....................15, 16

*Tax Analysts v. IRS*,
294 F.3d 71 (D.C. Cir. 2002)....................26

*Thompson v. DOJ*,
851 F. Supp. 2d 89 (D.D.C. 2012)....................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................10

*Tsai v. United States*,
No. 25-5110, 2026 WL 1876233 (D.C. Cir. June 30, 2026)....................7

*Weisberg v. DOJ*,
745 F.2d 1476 (D.C. Cir. 1984)....................6

*Weisberg v. DOJ*,
705 F.2d 1344 (D.C. Cir. 1983)....................14

*Williams v. DOJ*,
No. 1:23-cv-401 (ACR), 2024 WL 2864223 (D.D.C. June 6, 2024)....................19

**STATUTES**

5 U.S.C. § 552.................... *passim*

**RULES**

Fed. R. Civ. P. 12....................11

**REGULATIONS**

28 C.F.R. Part 16....................10

**OTHER AUTHORITIES**

Ltr. from former Attorney General Pamela Bondi to FBI Director Kash Patel (Feb. 27, 2025),
https://perma.cc/82T6-7SH9....................3, 18

Memorandum from the U.S. Department of Justice and Federal Bureau of Investigation
(July 6, 2025),
https://perma.cc/9VYC-9SMF....................18

## INTRODUCTION

Under the Freedom of Information Act ("FOIA"), "an agency must disclose all records requested by 'any person,' 5 U.S.C. § 552(a)(3), unless the information sought falls within a specific statutory exemption." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989) (citing 5 U.S.C. § 552(d)). This case involves a FOIA request for agency records submitted by Plaintiff MSW Media, Inc., for FBI training videos stored in identified locations on how to handle the agency's review of investigative records related to Jeffrey Epstein. The FBI conducted an adequate search for the records requested by Plaintiff and, after locating responsive records, properly determined that all records should be withheld under FOIA Exemptions 5, 6, 7(C), and 7(E).

Plaintiff appears to challenge the adequacy of the FBI's search for records responsive to Plaintiff's request based solely on the small number of records located and the FBI's decision not to accede to Plaintiff's demands to DOJ litigation counsel—made in the course of litigation—to expand the scope of the records sought in its FOIA request and the locations to be searched. Plaintiff also challenges the propriety of the FBI's withholdings. These claims are meritless.

The scope of the FBI's search is determined by the plain text of Plaintiff's original FOIA request, not Plaintiff's later attempts to "clarify" that request. Moreover, Plaintiff's purported clarifications actually sought to expand its request, including by seeking non-video items in addition to the videos it originally requested, and Plaintiff's demand for additional records fails for lack of jurisdiction as well as on the merits. The FBI conducted a reasonable search, and Plaintiff's mere belief that the agency did not locate all responsive records does not show otherwise.

The FBI has also satisfied its burden of demonstrating the applicability of the asserted FOIA exemptions, the harm that would result from disclosure of the requested information, and that no portion of the withheld materials is reasonably segregable. This Court should thus grant summary judgment to the FBI.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

The FOIA provides a person with a judicially enforceable right of access to federal agency records, unless such records are protected from disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(a)(4), (b)(1)–(9). Upon receipt of a request for records, the agency must determine within twenty working days whether it will comply with the request "and shall immediately notify the person making such request of …such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i). After such time has expired, if the agency has not responded, the requester may bring suit in federal district court to compel production of improperly withheld records. *See id.* § 552(a)(4)(B).

### II. FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2025, MSW Media, Inc., submitted a request under the FOIA to the Department of Justice ("DOJ"), Office of Information Policy ("OIP") for "all grand jury testimony in the criminal cases against Jeffrey Epstein and Ghislaine Maxwell." Compl. ¶ 18, ECF No. 1. On July 22, 2025, Plaintiff submitted a request under the FOIA to the FBI for "all videos stored on Sharepoint (on the unclassified side) or Sharepoint or BuTube (on the classified side) which were created or used to train FBI personnel in how to review records about Jeffrey Epstein." Request of MSW Media at 1, ECF No. 11-1; *see also* Decl. of Shannon R. Hammer ("Hammer Decl."), Ex. A.[1] Plaintiff sought expedited processing of its requests. *See, e.g.,* Request of MSW Media.

On July 29, 2025, the FBI acknowledged receipt of Plaintiff's July 22 request and advised that unusual circumstances applied to Plaintiff's request. *See* Ltrs. from FBI Records/Information Dissemination Section, Information Management Division ("RIDS") to Kel McClanahan (July 29, 2025), Hammer Decl., Exs. B & C.

The same day, the FBI searched Administrative File 62F-HQ-A4051821 (the 62 file) "in

[1] The Hammer Declaration is attached as Ex. 1 hereto.

response to a request for records from another person, and … located all nine training videos" that it later determined were responsive to Plaintiff's request. Hammer Decl. ¶ 16. The 62 file "was created and maintained for the purpose of compiling administrative (as opposed to investigative) records related to the process of responding to the Attorney General's February 27, 2025, directive to the FBI director." *Id.* (citing Ltr. from former Attorney General Pamela Bondi to FBI Director Kash Patel (Feb. 27, 2025), https://perma.cc/82T6-7SH9 ("Bondi Letter")). That directive instructed the FBI "to compile the investigative records related to Jeffrey Epstein and redact them," and, to comply, "the FBI created, among other things, certain training videos on how to properly access documents for review, how to process files and redact information, and where to save processed files, as it related to the review of the investigative records about Jeffrey Epstein." *Id.* These training videos were placed "in the 62 file." *Id.*

Plaintiff filed suit on August 2, 2025, seeking to compel the production of records sought by its two FOIA requests. *See* Compl. ¶¶ 18, 27. On September 4, 2025, however, Plaintiff filed an Amended Complaint withdrawing its FOIA request made to OIP, *see* Am. Compl. ¶ 22, ECF No. 7, but maintaining its claims against the FBI. *See id.* ¶¶ 24–47, Second through Fifth Causes of Action.

On September 19, 2025, Plaintiff filed a motion for partial summary judgment seeking expedited processing of its FOIA request submitted to the FBI. *See* Pl.'s Mot. for Partial Summ. J., ECF No. 9.

On December 7, 2025, after Plaintiff had commenced this litigation, Plaintiff's counsel contacted Defendant's counsel and demanded that the FBI expand the scope of Plaintiff's request. In addition to the videos requested in its July 2025 FOIA request, Plaintiff now demanded "[u]pdated training materials and workflow guidance" described in a March 22, 2025, email to another FOIA requester. Email from Kel McClanahan to Jason Altabet (Dec. 7, 2025) ("December 2025 Email"), attached as Ex. 2. Plaintiff also demanded training videos "embedded in

PowerPoint decks," including those "identified as being part of the 'Epstein Transparency Project' or 'Special Redaction Project.'" *Id.* The FBI declined to expand the scope of Plaintiff's FOIA request. *See* Hammer Decl. ¶ 12.

On June 30, 2026, the FBI completed its review of records responsive to Plaintiff's July 2025 FOIA request and provided its response to Plaintiff, explaining that the agency was withholding the records in full under FOIA Exemptions 5, 6, 7(C), and 7(E). *See* Ltr. from RIDS to Kel McClanahan (June 30, 2026), Hammer Decl., Ex. G.

On July 1, 2026, this Court denied Plaintiff's motion for partial summary judgment seeking expedited processing of its FOIA request. *See* Mem. & Order Denying Pl.'s Mot. for Partial Summ. J., ECF No. 15.

On August 20, 2026, during an email exchange between counsel about a joint status report, Plaintiff's counsel sent DOJ litigation counsel an email asserting that Plaintiff's FOIA request "explicitly included videos that were embedded in powerpoint decks, and specified that when a video was embedded in a deck the entire deck was responsive." Email from Kel McClanahan to James Todd (Aug. 20, 2026) ("August 2026 Email"), attached as Ex. 3. Plaintiff's counsel asserted that "there's no way an adequate search yielded only videos and no powerpoint slides." *Id.* But the FBI determined that Plaintiff's FOIA request "did not request non-video items, and that this new demand was an attempt to expand the scope of Plaintiff's original FOIA request." Hammer Decl. ¶ 14. Accordingly, DOJ litigation counsel responded to Plaintiff's counsel that "[t]he plain terms of [Plaintiff's] request do not appear to contain a request for slide decks[,]" Email from James Todd to Kel McClanahan (Aug. 20, 2026), Ex. 4. DOJ litigation counsel further explained that because "Plaintiff's December 2025 email was improperly attempting to expand the scope of its original FOIA request in the course of litigation," the FBI "did not consider it in conducting its search for records responsive to Plaintiff's original request." Email from James Todd to Kel McClanahan (Aug. 21, 2026), Ex. 5.

Plaintiff now challenges the adequacy of Defendant's search and the applicability of the FOIA Exemptions.

**STANDARD OF REVIEW**

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Under FOIA, a court conducts a *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions. 5 U.S.C. § 552(a)(4)(B), (b)(1)–(9).

To be entitled to summary judgment, a defendant in a FOIA case must show that its "search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (citation omitted). The agency must also show foreseeable harm would result from the disclosure of exempt information. *See Rosenberg v. DOD*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). In a FOIA action, summary judgment may be granted on the basis of information provided in declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail[.]" *Military Audit Project v. Casey*, 656 F.2d 724, 738 (1981) (footnote omitted). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).[2] "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" to the court. *Judicial Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted). As the Supreme Court

[2] "In the FOIA context, unlike the common law context, an agency is not required to submit an affidavit from an agency head or high-level agency official to invoke the deliberative process … in conjunction with Exemption 5." *Shannahan v. IRS*, No. 08-cv-452, 2009 WL 4051078, at *10 (W.D. Wash. Sept. 3, 2009); *CACI Field Servs., Inc. v. United States*, 12 Cl. Ct. 680, 687 n.7 (Cl. Ct.1987)).

has emphasized, FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

## ARGUMENT

### I. THE FBI CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST

The FBI is entitled to summary judgment because the agency conducted a reasonable search for records responsive to MSW Media's FOIA request for agency training videos.

To obtain summary judgment on the question of search adequacy, an agency must show that it "has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). Searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)). "[A] federal agency may submit 'reasonably detailed' affidavits or declarations that describe the search performed" to demonstrate that a search for documents was reasonable. *Bigwood v. DOD*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (citation omitted). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

The FBI has met this burden. The scope of its search obligations was properly defined by Plaintiff's July 2025 FOIA request (which sought only videos), not Plaintiff's December 2025 or August 2026 emails to DOJ litigation counsel (which sought, among other things, non-video

items). And the FBI's search for records responsive to Plaintiff's July 2025 FOIA request was reasonable.

**A. The Adequacy of the FBI's Search Should Be Determined Based on Plaintiff's July 2025 Request and Not Its December 2025 or August 2026 Emails**

**1. An Agency's Search Obligations Are Based on the FOIA Request's Plain Language Without Regard to Later Clarification Attempts**

The scope of responsive records was determined by Plaintiff's July 2025 FOIA request without regard to its December 2025 or August 2026 emails to DOJ litigation counsel. The FBI "was bound to read [Plaintiff's July 2025 request] as drafted, not as either agency officials or [Plaintiff] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984); *see Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("[T]he Bureau is not obliged to look beyond the four corners of the request for leads to the location of responsive documents."). "Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records[,]'" *Evans v. BOP*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)), meaning "the agency is able to determine precisely what records are being requested" based on the request itself, *id.* (quoting *Kowalczyk*, 73 F.3d at 388).

It is well-settled in this District that "[c]larifications to a FOIA request neither transform the original request into a different one nor do they impose new obligations on the agency." *Tsai v. United States*, No. 25-5110, 2026 WL 1876233, at *3 (D.C. Cir. June 30, 2026); *see Coss v. DOJ*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015) ("a FOIA plaintiff may not expand the scope of his request once his original request is made"). After submitting a FOIA request, "Plaintiff's later representations concerning these records do not alter the limits imposed by the plain text of its Request." *Ecological Rts. Found. v. EPA*, No. 1:19-cv-980 (BAH), 2021 WL 535725, at *9 (D.D.C. Feb. 13, 2021), *opinion vacated in part on reconsideration on other grounds*, 541 F. Supp. 3d 34 (D.D.C. 2021). Because post-request clarification attempts "cannot expand a FOIA request after it is made," any such attempts "are owed no weight in the scope analysis." *Id.* at *10 (citation

omitted).

The caselaw is clear, therefore, that the FBI was required "only to conduct a search reasonably calculated to uncover all relevant documents" based on the language of Plaintiff's July 2025 request, without regard to Plaintiff's subsequent attempts to explain what it meant by that language. *Kowalczyk*, 73 F.3d at 389 (citations omitted); *see Miller*, 730 F.2d at 777. Moreover, Plaintiff's December 2025 and August 2026 emails postdated the filing of this lawsuit in August 2025, and courts in this District have consistently rejected plaintiffs' attempts to "expand the scope of [a] FOIA request in the course of litigation[.]" *Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017) (citation omitted); *see Jordan v. DEA*, No. 1:22-cv-2195 (JEB), 2023 WL 2809132, at *4 (D.D.C. Apr. 6, 2023) ("the suggestion that a FOIA requester can 'broaden his request … after filing litigation sits without any firm basis in the statutory text or associated case law") (quoting *Dillon v. DOJ*, 444 F. Supp. 3d 67, 86 (D.D.C. 2020)). Thus, in evaluating whether the FBI's search was reasonable, this Court should focus on the July 2025 request and should disregard Plaintiff's December 2025 and August 2026 emails.

**2. Any Attempt to Expand the July 2025 Request Is Not Properly Before the Court**

The FBI reasonably interpreted Plaintiff's December 2025 and August 2026 emails as improperly seeking to expand the scope of Plaintiff's July 2025 FOIA request. *See* Shannon Decl. ¶¶ 12, 14. For example, the July 2025 request sought only videos, specifically "all videos stored on Sharepoint (on the unclassified side) or Sharepoint or BuTube (on the classified side) which were created or used to train FBI personnel in how to review records about Jeffrey Epstein." Request of MSW Media. Yet, Plaintiff's December 2025 email appeared to seek more than videos in that it also sought "[u]pdated training materials and workflow guidance" described in a March 2025 email to another FOIA requester. December 2025 Email. Plaintiff's August 2026 email confirmed that Plaintiff was now seeking more than the videos requested in its July 2025 request.

It incorrectly claimed that Plaintiff's request had "specified that when a video was embedded in a deck the entire deck was responsive[,]" such that "there's no way an adequate search yielded only videos and no powerpoint slides." August 2026 Email. However, neither Plaintiff's July 2025 FOIA request nor its December 2025 email "specified that when a video was embedded in a deck the entire deck was responsive." *Id.* The demand for "entire [PowerPoint] deck[s]," *id.*, was made for the first time in August 2026.

Plaintiff's attempt to expand the scope of its July 2025 FOIA request through its December 2025 and August 2026 emails is thus improper for four reasons. *First*, Plaintiff lacks standing to seek the disclosure of records beyond the scope of its July 2025 request. *Second*, this Court lacks jurisdiction over any claims beyond the scope of the Amended Complaint, which is based on the July 2025 request and predated the December 2025 and August 2026 emails. *Third*, Plaintiff failed to exhaust its administrative remedies regarding the expanded scope in its December 2025 and August 2026 emails. And *finally*, it was reasonable for the FBI to conduct a search based on the July 2025 request and to disregard Plaintiff's subsequent attempts at "clarification."

**a. Plaintiff Lacks Standing to Seek Records Beyond the Scope of its July 2025 Request**

To show standing, Plaintiff must show it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). The "injury in fact" must be "'concrete,' meaning that it must be real and not abstract[,]" and "also must be particularized[,]" affecting the plaintiff "in a personal and individual way." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ( citation omitted), *on remand* 117 F.4th 336 (5th Cir. 2024). In the FOIA context, "the requester has suffered a particularized injury [if] he has requested and been denied information Congress gave him a right to receive." *Prisology, Inc. v. BOP*, 852 F.3d 1114, 1117 (D.C. Cir. 2017). Thus, requestors must show they "sought and were denied

specific agency records." *Id.* (quoting *Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997)).

Because "standing is not dispensed in gross …, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted). Accordingly, for each record a FOIA plaintiff claims it should receive, the plaintiff must show that it submitted a FOIA request to the agency that "sought" that record and that the agency "denied" its request. *Prisology*, 852 F.3d at 1117 (quoting *Sargeant*, 130 F.3d at 1070).

Here, Plaintiff's December 2025 and August 2026 emails to DOJ litigation counsel demanded records beyond the scope of Plaintiff's July 2025 FOIA request to the FBI. But Plaintiff never submitted a FOIA request to the FBI that "sought" those additional records, nor did the FBI "den[y]" any such request. *Id.* (quoting *Sargeant*, 130 F.3d at 1070). Plaintiff's December 2025 and August 2026 emails, of course, were not FOIA requests: they were not a "request for records … made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A); *see* 28 C.F.R. Part 16. Thus, Plaintiff lacks standing to claim entitlement to such records. Indeed, Plaintiff lacks standing to claim entitlement to *any* records beyond the scope of its July 2025 request.

**b. Any Claim of Entitlement to Records Beyond the Scope of Plaintiff's July 2025 Request Exceeds the Scope of the Amended Complaint and is Thus Beyond the Court's Jurisdiction**

This Court "lacks jurisdiction over a motion when it raises issues different from those presented in the complaint." *Sai v. TSA*, 54 F. Supp. 3d 5, 9 (D.D.C. 2014) (citation omitted). Accordingly, in a case where a "plaintiff's complaint pertain[ed] to a single FOIA request submitted to the FBI," another court in this District rejected the plaintiff's attempts to "expand the scope of th[e] action to include" records beyond the scope of that request, holding that "[p]roduction of [such] records … must be pursued in a separate action, following requests for production of the records from [the relevant] agencies." *Donoghue v. Off. of Info. Policy*, *DOJ*,

157 F. Supp. 3d 21, 23 n.2 (D.D.C. 2016); *see Stone v. U.S. Dep't of State*, No. 1:21-cv-3244 (RC), 2026 WL 861064, at *3 n.4 (D.D.C. Mar. 30, 2026) (rejecting the plaintiff's attempt to "seek[] various forms of relief beyond the scope of his initial complaint," which concerned "issues not before th[e] Court").

Here, the Amended Complaint asserted entitlement to the documents sought in Plaintiff's July 2025 request, Am. Compl. ¶¶ 25, 42–47, but not any additional documents sought in Plaintiff's December 2025 and August 2026 emails. Indeed, the Amended Complaint was filed on September 4, 2025, three months before Plaintiff sent its December 7, 2025, email and 11 months before Plaintiff sent its August 20, 2026, email. Thus, any claim of entitlement to records not sought in Plaintiff's July 2025 request, including any additional records sought in Plaintiff's December 2025 and August 2026 emails, is "beyond the scope of [the Amended] [C]omplaint[,]" and the Court lacks jurisdiction over it. *Sai*, 54 F. Supp. 3d at 9.

#### c. Plaintiff Has Not Exhausted Its Administrative Remedies With Respect to Documents Not Sought in Its July 2025 Request

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (citation omitted); *id.* (dismissing FOIA action under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies). Applying this requirement, a court in this District rejected a plaintiff's claim of entitlement to records he "did not request … at the administrative level," holding that "he will not be permitted to expand the scope of the request underlying this action and then assert an unexhausted claim." *Spears v. DOJ*, 139 F. Supp. 3d 79, 86 (D.D.C. 2015).

Here, for the records demanded in Plaintiff's December 2025 and August 2026 emails beyond the scope of its July 2025 FOIA request, Plaintiff has not exhausted its administrative

remedies. Any claim of entitlement to such records should be dismissed. *See Hidalgo*, 344 F.3d at 1258.

**d. In Processing Plaintiff's July 2025 Request, the FBI Reasonably Decided Not to Consider Plaintiff's December 2025 and August 2026 Emails**

For the reasons explained above, Plaintiff's demand for the records sought for the first time in its December 2025 and August 2026 emails is not properly before this Court. But even if the Court reached the merits of that claim, the FBI's decision not to modify its search based on Plaintiff's December 2025 and August 2026 emails was reasonable. *See Steinberg*, 23 F.3d at 551; *Light*, 968 F. Supp. 2d at 23.

The D.C. Circuit addressed similar facts in *Kowalczyk*. In that case, "[t]he FBI searched for records responsive to [the plaintiff's FOIA] request … within three weeks of receiving it." 73 F.3d at 388. About "four months" later, the plaintiff sent a "second letter" providing additional detail about its request. *Id.* The court held that "[a] reasonable effort to satisfy that request does not entail an obligation to search anew based upon a subsequent clarification[,]" explaining that "[r]equiring an additional search each time the agency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests." *Id.* The court therefore "set[] aside" the plaintiff's second letter in determining whether the FBI's search was adequate. *Id.*

Here, Plaintiff submitted its FOIA request to the FBI on July 22, 2025. *See* Am. Compl. ¶ 25. One week later, on July 29, 2025, the FBI conducted a search that captured the "records responsive to Plaintiff's request." Hammer Decl. ¶ 16.[3] Plaintiff then emailed DOJ litigation counsel purporting to clarify its request in December 2025 (over four months after the FBI's search) and again in August 2026 (over a year after the FBI's search). As in *Kowalczyk*, "[a] reasonable effort to satisfy [Plaintiff's July 2025] request does not entail an obligation to search

[3] Although the FBI conducted this search in connection with a different FOIA request, it later determined that the search captured the information responsive to Plaintiff's request and that a further search was therefore unnecessary. *See* Hammer Decl. ¶ 16.

anew based upon [] subsequent clarification[s]" in Plaintiff's December 2025 and August 2026 emails. 73 F.3d at 388. This is especially true for Plaintiff's August 2026 email, which postdated the FBI's June 2026 FOIA response, because "[t]o require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991). This Court should therefore "set[] aside" the December 2025 and August 2026 emails in evaluating the adequacy of the FBI's search. *Kowalczyk*, 73 F.3d at 388.

### B. The FBI's Search Was Reasonable

The FBI's declaration "explain[s] in reasonable detail the scope and method of the [FBI's] search" and shows that this search was reasonable. *Perry*, 684 F.2d at 127; *see Bigwood*, 132 F. Supp. 3d at 135. It explains that "the FBI reviewed Plaintiff's request and determined that the information responsive to its request had already been collected and housed within [the 62 file]." Hammer Decl. ¶ 16. As discussed above, the 62 file "was created and maintained for the purpose of compiling administrative (as opposed to investigative) records related to the process of responding to the Attorney General's February 27, 2025, directive to the FBI director." *Id.* (citing Bondi Letter). Because the 62 file encompassed all the videos sought in Plaintiff's July 2025 FOIA request, "the agency determined it was unnecessary to search other locations for records responsive to [that] request." *Id.* And "because the FBI knew where the responsive videos were located within the 62 file, the FBI further determined that it was unnecessary to develop and use search terms to locate [them]." *Id.*

On July 29, 2025, as discussed above, the FBI searched the 62 file "in response to a request for records from another person, and … located all nine training videos." *Id.* It later "determined that no further search for records responsive to Plaintiff's FOIA request was necessary" because it "had already searched the only location containing records responsive to [that] request and had already located the responsive videos." *Id.*

The FBI's July 29, 2025, search of the 62 file thus satisfied its obligation to conduct a reasonable search in response to Plaintiff's request. The 62 file was "the only location containing records responsive to [that] request," and the agency searched that file and "located the responsive videos" that Plaintiff requested. *Id*. Thus, the FBI's search for records was "reasonably calculated to uncover all relevant documents" sought in Plaintiff's request. *Steinberg*, 23 F.3d at 551 (citation omitted).

Moreover, the fact that the July 29 search was conducted in response to a different FOIA request is immaterial. When an "agency can show it has already looked for all documents [the plaintiff] seeks, it of course is under no obligation to look further." *Weisberg v. DOJ*, 705 F.2d 1344, 1356 (D.C. Cir. 1983). FOIA does not require an additional search that "would be duplicative of a search that has already been conducted." *Am. Chemistry Council*, *Inc. v. HHS*, 953 F. Supp. 2d 120, 127 (D.D.C. 2013) (citation omitted); *accord Akel v. DOJ*, No. 1:20-cv-3240 (RDM), 2024 WL 5359362, at *2 (D.D.C. Nov. 7, 2024), *vacated & remanded by*, No. 25-5011, 2026 WL 1074084 (D.C. Cir. Apr. 16, 2026); *Cato Inst. v. FBI*, 638 F. Supp. 3d 13, 20 (D.D.C. 2022), *on remand*, No. 20-3338, 2026 WL 2687271 (D.D.C. Sept. 14, 2026); *Spannaus v. CIA*, 841 F. Supp. 14, 18 (D.D.C. 1993). Here, because the FBI had already searched "the only location containing records responsive to [Plaintiff's] request" and "located the responsive videos[,]" Hammer Decl. ¶ 16, it was "under no obligation to look further," *Weisberg*, 705 F.2d at 1356.

In sum, the FBI conducted a reasonable search for records responsive to Plaintiff's July 2025 FOIA request. Thus, the FBI is entitled to summary judgment on the adequacy of its search.

## II. RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST ARE PROPERLY PROTECTED UNDER EXEMPTION 5

The FBI properly withheld under Exemption 5 information reflecting legal advice provided by the Department of Justice to the FBI because that information is protected by the attorney-client privilege. Exemption 5 "encompass[es] the protections traditionally afforded certain

documents pursuant to evidentiary privileges in the civil discovery context[.]" *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)); *see also Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). Among other things, Exemption 5 protects from disclosure information protected by the attorney-client privilege. *See generally Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). This includes "confidential communications from clients to their attorneys made for the purpose of securing legal advice," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Id*. at 618 (citation modified); *Parker v. U.S. DOJ Exec. Off. for U.S. Attorneys*, 78 F. Supp. 3d 238, 243 (D.D.C. 2015). "In the governmental context, the 'client' may be the agency[,] and the attorney may be an agency lawyer." *Tax Analysts*, 117 F.3d at 618.

In this case, the FBI properly withheld information contained in Training Video 7 that reflected "legal advice provided by Department of Justice attorneys to the FBI[.]" Hammer Decl. ¶¶ 21–22. The FBI determined that it created these training videos as part of the Attorney General's directive to the FBI to provide the full and complete investigative files related to Jeffrey Epstein to DOJ, to "ensure that any public disclosure of these files will be done in a manner to protect the privacy of victims and in accordance with law[.]" Bondi Letter. "To accomplish the goal of transparency and releasing documents in accordance with the law and DOJ directives," the FBI, at the direction of DOJ lawyers, "developed training materials for document reviewers to provide review protocols that inform whether and how to withhold certain information pursuant to various privacy statutes and grand jury restrictions." Hammer Decl. ¶ 21.

The FBI properly determined that Training Video 7 reflected legal advice and guidance from DOJ counsel relating to redaction placement on various documents as a part of record processing, including protecting "the privacy of victims in accordance with the law." *Id*. ¶ 22; *accord Dhakal v. FBI*, No. 1:24-cv-2525 (TNM), 2026 WL 787865, at *4 (D.D.C. Mar. 20, 2026)

(In producing responsive records, the FBI properly redacted "details within an electronic communication between FBI general counsel and FBI employees (their clients) ... that reflect the seeking and/or providing of legal advice." (citation omitted)). Moreover, "[t]he information shared between clients and attorneys was made in confidence, was not shared with or circulated to individuals outside the attorney-client relationship, and was made for the purpose of providing legal assistance or advice in relation to government legal positions." Hammer Decl. ¶ 22. Thus, the FBI correctly determined that Video 7 reflected confidential legal advice by agency lawyers to the FBI. *Accord Tax Analysts*, 117 F.3d at 618; *Dhakal,* 2026 WL 787865, at *4 (holding that such information "falls squarely within the attorney-client … protection[] under Exemption 5").

Additionally, the FBI properly determined that "release of this attorney-client privileged information would cause substantial harm to the agency's ability to fulfill its mission." Hammer Decl. ¶ 23. "To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption ... and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). To clear that bar, the agency "must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials." *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citation modified). However, "'[a]n agency's burden under the foreseeable harm requirement may be more easily met when invoking' the attorney-client and 'other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated.'" *Dhakal*, 2026 WL 787865, at *4 (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021)).

In this case, the FBI properly determined that disclosure of confidential legal advice from "DOJ attorneys would call into question the FBI's commitment to withhold confidential information shared between agency clients and attorneys and could dissuade agency attorneys and

clients from fully sharing such information and endanger agency attorneys' ability to provide the best possible legal representation of their clients." Hammer Decl. ¶ 23; *see Dhakal*, 2026 WL 787865, at *4. Furthermore, the agency determined that "disclosure of attorney-client privileged legal advice would provide an advantage to individuals seeking legal action against the government." Hammer Decl. ¶ 23; *see Dhakal*, 2026 WL 787865, at *4. "It would provide information traditionally privileged in a legal context." Hammer Decl. ¶ 23. As a result, the FBI sufficiently supported its assertion of Exemption 5 by demonstrating the foreseeable harm that would result from the disclosure of this attorney-client privileged information. *See Dhakal*, 2026 WL 787865, at *4.

## III. RECORDS RESPONSIVE TO MSW MEDIA'S FOIA REQUEST ARE PROPERLY WITHHELD UNDER EXEMPTIONS 6 AND 7

The FBI properly withheld records responsive to MSW Media's FOIA request pursuant to FOIA Exemptions 6 and 7.

### A. The Training Videos Were Created for Law Enforcement Purposes

To rely upon Exemption 7, the FBI must demonstrate that the records at issue "w[ere] compiled for law enforcement purposes[.]" *Elec. Priv. Info. Ctr. v. DHS*, 777 F.3d 518, 522 (D.C. Cir. 2015) (citation omitted) ("*EPIC*"); *see* 5 U.S.C. § 552(b)(7). "[T]he term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *EPIC*, 777 F.3d at 522 (citations omitted).

Exemption 7, moreover, uses the term "'law enforcement' to describe 'the act of enforcing the law, both civil and criminal.'" *Sack v. DOD*, 823 F.3d 687, 694 (D.C. Cir. 2016) (quoting *Public Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("*PEER*")). Justice Alito has also persuasively explained that the "ordinary understanding of law enforcement includes … proactive steps designed to prevent

criminal activity and to maintain security." *Milner v. Dep't of the Navy,* 562 U.S. 562, 582 (2011) (Alito, J., concurring). As a result, documents are compiled for law enforcement purposes if they were, for example, "created to prevent crime and keep people safe," *EPIC*, 777 F.3d at 523 (citing *PEER*, 740 F.3d at 203), "deter illegal activity and ensure national security," *Sack* , 823 F.3d at 694, or otherwise "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law[,]" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)). The exemption applies so long as release of the information "could increase the risks that a law will be violated." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (citation modified).

As a preliminary matter, it goes without saying that the FBI compiled the Epstein-related investigative files for a law enforcement purpose. Moreover, "[t]he FBI created the[] training videos to assist the agency in reviewing all information contained in the Epstein-related investigative files in order to determine whether the files could reveal additional information that would serve as a predicate to investigate uncharged third parties." Hammer Decl. ¶ 25; *see* Memorandum from the U.S. Department of Justice and Federal Bureau of Investigation (July 6, 2025), https://perma.cc/9VYC-9SMF ("DOJ & FBI Memo").

The agency also properly determined that the training videos sought by Plaintiff "had been developed and used in response to the Department of Justice's directive to the FBI to ensure that it would properly collect, review, redact as necessary, and deliver to the Department all Epstein-related investigative files." Hammer Decl. ¶ 26. Among other things, "the Attorney General had directed the FBI to conduct an investigation into why her order did not appear to have already been followed." *Id.*; *see* Bondi Ltr. This included a request by the Attorney General for a report of the FBI's findings about "why the full set of Epstein-related investigative records had allegedly not been provided to the Department, as well as proposed personnel actions resulting from any

potential misconduct." Hammer Decl. ¶ 26; Bondi Ltr. The agency thus developed these training videos "as part of its efforts to ensure compliance with the Attorney General's directive, including compliance with all applicable statutes and identification of persons potentially implicated in potential misconduct." Hammer Decl. ¶ 26.

The training videos thus meet the threshold requirement of Exemption 7. *See Campbell*, 164 F.3d at 32 ("Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference."); *Jimenez v. FBI*, 938 F. Supp. 21, 29 (D.D.C. 1996) (documents containing information "in connection with the receipt, processing, safekeeping, and transportation of plaintiff while he was in the USMS's custody" satisfied Exemption 7's threshold requirement); *Williams v. DOJ*, No. 1:23-cv-401 (ACR), 2024 WL 2864223, at *4 (D.D.C. June 6, 2024).

### B. The FBI Properly Withheld Private Information Contained in the Videos Under Exemptions 6 and 7(C)

Exemptions 6 and 7(C) protect the privacy of individuals from unwarranted invasion. Exemption 6 allows the withholding of information about individuals in "personnel and … similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Exemption 7(C) is the law enforcement counterpart to Exemption 6 and protects from disclosure "law enforcement records or information" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7).

These FOIA Exemptions "require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *Braga v. FBI*, 910 F. Supp. 2d 258, 266 (D.D.C. 2012) (quoting *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)). They "protect[] not only … individuals' names or other discrete personally-identifiable information, but also, more generally, records and information that would reveal the individual's identity." *Boyd v. Exec. Off. for U.S. Att'ys*, 161 F. Supp. 3d 1, 11 (D.D.C. 2015), *aff'd*, No. 16-5133, 2016 WL 6237850 (D.C. Cir. Sept. 16, 2016)

(citation modified). "[W]hat constitutes identifying information regarding a [person] must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar" with the person or the events in question. *Id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 (1976)). "[W]itnesses have a right to have their identities protected from disclosure" because "there is a fair possibility that plaintiff would be able to identify [them] based on other information in the documents, even if their names were redacted." *Id.* at 12. "[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity[.]" *Thompson v. DOJ*, 851 F. Supp. 2d 89, 99 (D.D.C. 2012) (quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984)). Indeed, the D.C. Circuit has held "categorically that, unless access to the names … of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206.

On the other side of the inquiry, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve 'the core purpose of …FOIA,' which is 'contribut[ing] significantly to public understanding of *the operations or activities of the government*.'" *DOD v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *DOJ v. Reps. Comm. for Freedom of the Press* , 489 U.S. 749, 775 (1989)). "This inquiry, moreover, should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker*, 349 F.3d at 661 (citing *King v. DOJ*, 830 F.2d 210, 234 (D.C. Cir. 1987)).

Although Exemptions 6 and 7(C) require the same weighing of competing interests, the balance under Exemption 7(C) "tilts more strongly toward nondisclosure[.]" *Bartko v. DOJ*, 79 F. Supp. 3d 167, 172 (D.D.C. 2015). Phrasing differences between the two exemptions reflect Congress's choice to provide "greater protection" to law enforcement materials than to "personnel, medical, and other similar files." *Bartko*, 79 F. Supp. 3d at 172 (citing *Reps. Comm.*, 489 U.S. at

756). Thus, Exemption 7(C) "establishes a lower bar for withholding material [than Exemption 6]." *Am. Civil Liberties Union v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citation omitted).

In this case, the FBI properly withheld under Exemptions 6 and 7(C) the names and identifying information of (1) FBI Special Agents ("SAs") and professional staff, (2) third parties who were merely mentioned in the investigative records responsive to Plaintiff's requests, and (3) third-party victims. For each category, the FBI balanced these individuals' privacy interests against any public interest in disclosure of their identities, and properly determined that disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. *See* Hammer Decl. ¶¶ 28–36.

**1. The FBI Properly Withheld Private Information About SAs and Professional Staff**

The FBI properly withheld private information about FBI SAs and professional staff appearing in the training videos. The agency explained that this group "included employees who were assigned to conduct, supervise, and/or participate in the Epstein-related investigations" and "employees whose information appears in the videos and who were assigned to conduct, supervise, and/or participate in the administrative activities related to a request from AG Bondi for the production of the entire scope of files related to the investigation of Jeffrey Epstein." Hammer Decl. ¶ 30. Noting that "[a]ssignments of SAs to any particular investigation are not by choice," the FBI determined that "[p]ublicity, adverse or otherwise, arising from a particular investigation, may seriously prejudice SAs' effectiveness in conducting other investigations or performing their day-to-day work." *Id.* ¶ 31. It also considered the need to "protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI." *Id.*

Moreover, the FBI reasonably found that "[t]he publicity associated with the release of an SA's identity in connection with a particular investigation could trigger hostility toward a particular SA." *Id.* Because targets of FBI investigations "may carry a grudge against those

involved with the investigation, which may last for years," and "may seek revenge on SAs and other federal employees involved in a particular investigation," there is a serious risk that targets of FBI investigations or those sympathetic to them "could seek to inflict violence on an SA based on their participation in an investigation." *Id.*; *see Dhakal*, 2026 WL 787865, at *5 (crediting the FBI's determination that "FBI employees could be targeted for reprisal based on their involvement in specific investigations/investigative activities"). These concerns are heightened here given "the high profile and notoriety of the subject matter." Hammer Decl. ¶ 31.

These concerns also apply to "FBI professional staff [who] were assigned to handle tasks related to the deployment of training materials and processing the investigative files." *Id.* ¶ 32. In addition to the risk of being "targeted for reprisal based on their involvement in specific investigations/investigative activities, … these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released." *Id.*; *see Dhakal*, 2026 WL 787865, at *5. Thus, the agency found that both SAs and professional staff have "substantial privacy interests in not having their identities disclosed." Hammer Decl. ¶ 32; *see Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 588 (D.C. Cir. 1987) (Ginsburg, J.) ("witnesses, informants, and the investigating agents … have a substantial interest in seeing that their participation remains secret"); *Schrecker* , 349 F.3d at 661 ("our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants").

Additionally, the FBI correctly found that "[t]here is no public interest served by disclosing the SAs' [and professional staff's] identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities." Hammer Decl. ¶¶ 31, 33; *see Dhakal*, 2026 WL 787865, at *5 (crediting the FBI's finding that the identities

of FBI employees "would not, themselves, significantly increase the public's understanding of the FBI's operations and activities"); *DOD*, 510 U.S. at 495; *Schrecker*, 349 F.3d at 661. Thus, "after balancing these SAs' [and professional staff's] substantial privacy interests against the non-existent public interest," the FBI properly determined that "disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy." Hammer Decl. ¶¶ 31, 33; *see Braga*, 910 F. Supp. 2d at 266; *Nat'l Ass'n of Retired Fed. Emps.* , 879 F.2d at 879 ("something, even a modest privacy interest, outweighs nothing every time").[4]

### 2. The FBI Properly Withheld Private Information About Third Parties Who Were Merely Mentioned in Investigative Records

The FBI properly withheld private information about third parties who were merely mentioned in the investigative records appearing in the training videos. Although Plaintiff's FOIA request sought only videos, those videos included "underlying investigative records … as screenshots or live feed for training purposes." Hammer Decl. ¶ 34. These investigative records identify third parties who "were tangentially mentioned in conjunction with FBI investigative efforts," although the third parties "were not of investigative interest to the FBI." *Id.* For example, "the FBI determined that the information about third parties contained in the demonstrative files used in the training videos identified a witness, his or her attorney, a notary, a police detective, and individuals identified only, for example, by first name, first name and last initial, or a partial name." *Id.*

This information is exempt from disclosure because the identities of these "private individuals appearing in [FBI's investigative] files" are not "necessary in order to confirm or

[4] *See Pray v. DOJ*, 902 F. Supp. 1, 3 (D.D.C. 1995), *aff'd in part, rev'd in part on other grounds*, No. 95-5383, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996) ("Here the possibilities, articulated by the FBI, of animosity or grudges toward special agents or prejudice to the effectiveness of individuals in the conduct of other cases to which they are assigned and the potential that individuals could be targeted for inquiries for unauthorized access to information or be subjected to unofficial inquiries not anticipated by their contact with the FBI, among other things, clearly outweigh any possible benefit that could accrue from the public access to information in these government files.").

refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Servs.*, 926 F.2d at 1206. Moreover, the FBI properly found that "[t]hese third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with an FBI investigation." Hammer Decl. ¶ 34. Given that "the FBI is an investigative and intelligence agency, disclosure of these third parties' names and/or identifying information in connection with an FBI investigation carries an extremely negative connotation." *Id.*; *see Schrecker*, 349 F.3d at 666 ("the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" (citation modified)). Moreover, "[d]isclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them." Hammer Decl. ¶ 34; *see Blackwell*, 646 F.3d at 41 ("privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated," and "the Supreme Court has made clear that requests for such third party information are strongly disfavored" (citation omitted)); *Senate of the Com. of Puerto Rico*, 823 F.2d at 588.

The FBI reasonably determined that "disclosing information about individuals who were merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI." Hammer Decl. ¶ 35; *see DOD*, 510 U.S. at 495; *Schrecker*, 349 F.3d at 661. Thus, "after balancing these third parties' substantial privacy interests against the non-existent public interest," the FBI correctly determined that "disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy." Hammer Decl. ¶ 35; *see Braga*, 910 F. Supp. 2d at 266; *Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 879.

**3. The FBI Properly Withheld Private Information About Third-Party Victims**

The FBI properly withheld private information about third-party victims that appeared in investigative files used in the training videos. Like information identifying third parties who were

merely mentioned in responsive investigative records, information identifying third-party victims is categorically exempt from disclosure because the identities of these "private individuals appearing in [FBI's investigative] files" are not "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Servs.*, 926 F.2d at 1206.

Additionally, the FBI reasonably determined that "[r]eleasing these individuals' identities in the context of these investigative records would cause embarrassment, as well as unsolicited and unnecessary attention to be focused on these individuals." Hammer Decl. ¶ 36. Moreover, "[s]uch a release could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harms they've already been forced to endure." *Id.* The FBI therefore found that "these victims maintain strong privacy interests in the protection of such personal information." *Id.*; *see Blackwell*, 646 F.3d at 41.

The FBI further found that "there is no legitimate public interest to be served by releasing the identities of these victims because their identities, themselves, would not shed light on the operations and activities of the FBI." Hammer Decl. ¶ 36; *see DOD*, 510 U.S. at 495; *Schrecker*, 349 F.3d at 661. Accordingly, "after balancing these third-party victims' substantial privacy interests against the non-existent public interest," the FBI properly determined that "disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy." Hammer Decl. ¶ 36; *see Braga*, 910 F. Supp. 2d at 266; *Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 879.

### C. Records Responsive to MSW Media's FOIA Request are Properly Withheld Under Exemption 7(E)

The FBI properly withheld records responsive to Plaintiff's FOIA request under Exemption 7(E). That Exemption protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations … if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). Among other things, the materials eligible for protection under Exemption 7(E) include agency materials "describing patterns of criminal activity to look for when investigating certain violations." *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993). Exemption 7(E) sets a relatively low bar, requiring an agency to show only that disclosure "might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *PEER*, 740 F.3d at 205 (quoting *Mayer Brown*, 562 F.3d at 1193 ).

In this case, the FBI properly withheld information under Exemption (7)(E) "to protect non-public information about FBI personnel appearing in the training videos and also to protect non-public databases and search results shown in those videos." Hammer Decl. ¶ 38.

**1. The FBI Properly Applied Exemption 7(E) to Withhold Internal Email Addresses, Non-Public Web Addresses, Computer Banner Lines, and Non-Public Telephone Numbers of FBI Personnel Identified in the Training Videos**

The FBI properly applied Emption 7(E) to withhold internal e-mail addresses, non-public web addresses, computer banner lines, and non-public telephone numbers of FBI personnel identified in the training videos. *See id.* ¶ 39. The agency properly determined that releasing this information "could provide criminals with specific targets for possible cyber-attacks and other types of attacks on FBI secure communications." *Id.* The FBI explained that examples of these types of attacks include "'spoofing,' which occurs when a criminal disguises a communication from an unknown source to appear as if the communication is coming from a known, trusted source." *Id.* Spoofing occurs in such forms as emails, telephone calls, and websites. *See id.* Bad actors often use social engineering techniques "to elicit sensitive information from the unsuspecting victim." *Id.* The FBI explained that "[t]his can be especially dangerous when criminals spoof numbers of law enforcement agencies so as to appear as if they are from official law enforcement agencies." *Id.*; *Dhakal*, 2026 WL 787865, at *6 ("Releasing this non-public

telephone number would provide criminals with specific targets for attacks on FBI communications through 'spoofing' or other illegal means." (citation omitted)). "Considering the current cyber-security environment where government data breaches and other hacking attempts on government systems are prevalent," the FBI reasonably determined that it is likely that the release of this type of information could provide hackers with avenues "to exploit the FBI's Information Technology system." Hammer Decl. ¶ 39.

The agency further determined that bad actors could potentially use this information to "gain unauthorized access to FBI systems, view and/or manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol, and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal communications." *Id.*; *Dhakal*, 2026 WL 787865 at *4 (crediting the FBI's identification of these potential harms). The FBI thus properly determined that releasing this category of information contained in these training videos "poses substantial risks to FBI information systems, could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the law." Hammer Decl. ¶ 39. Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information. *See Dhakal*, 2026 WL 787865 at *4.

**2. The Agency Properly Applied Exemption 7(E) to Withhold Database Information and Search Results**

The FBI properly applied Exemption 7(E) to withhold "the identities of sensitive investigative databases and database search results located through queries of these non-public databases used for official law enforcement purposes by the FBI that are shown in these training videos." Hammer Decl. ¶ 40. The agency reasonably determined that "[r]eleasing the identities of these databases and any information located through queries of these databases" would give criminals "insight into the available tools and resources the FBI uses to conduct criminal and national security investigations (*e.g.*, the scope of information stored within the databases, how the FBI uses the databases to support its investigations, the types of information most valued by the

FBI for particular investigations, and vulnerabilities of the databases).” *Id.*

Moreover, the agency properly determined that “[r]evealing the use of these databases in the context of FBI investigative records shown in these training videos, and the information generated through queries of these databases, would reveal the nature of their utility to FBI investigators and the scope of information stored within the databases.” *Id.* ¶ 41. The agency further determined that “[d]isclosing when and why the FBI queries these databases would reveal key information about FBI investigative strategies.” *Id.*; *Freeman v. FBI*, No. 1:18-cv-2769 (RBW), 2022 WL 4365734, at *2 (D.D.C. Sept. 21, 2022) (“[r]eleasing this type of information ... renders the associated computer systems vulnerable to attack, which, in turn, jeopardizes the information located at those addresses, which includes sensitive techniques and case strategies used in FBI investigations.” (citation omitted)). This is because “different investigative databases contain varying datasets, and revealing the types of data sought by investigators in particular investigative circumstances would reveal the FBI strategies employed in response to different investigative circumstances.” Hammer Decl. ¶ 41. Additionally, the agency reasonably determined that “disclosing the search results for particular subjects shown in these training videos would provide criminals with an understanding of the scope of FBI collected intelligence on particular subjects.” *Id.* It “would expose possible intelligence gaps and/or intelligence gathering strengths.” *Id*. This would allow bad actors “to make informed decisions on how they might structure their behavior to exploit these strengths and weaknesses and avoid detection and/or disruption by the FBI.” *Id.*; *see Freeman*, 2022 WL 4365734, at *2; *Rojas-Vega v. U. S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 310–11 (D.D.C. 2018) (finding that “internal URLs”, among other information, was properly withheld under Exemption 7(E)); *Parker v. U.S. Immigr. & Customs Enf't*, 238 F. Supp. 3d 89, 100–01 (D.D.C. 2017) (finding that information, including “law enforcement system URLs” and “internal website links” were properly withheld under Exemption 7(E) because release “could reasonably be expected to create a risk of circumvention by revealing

how ICE's databases work and rendering them more vulnerable to manipulation").

The FBI further properly determined that "[r]evealing the types of information stored in these databases would also reveal the types of information most useful to FBI investigators." Hammer Decl. ¶ 42. "This would provide criminals with an understanding of how they might structure their behavior and/or deploy countermeasures to deprive the FBI of useful intelligence/evidence, thus jeopardizing the FBI's investigative mission." *Id.*; *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 80 (D.D.C. 2022) ("[r]elease of the nonpublic details of these techniques would nullify their effectiveness, risk circumvention of the Leahy Laws, and undermine the U.S. Government's interest in ensuring that training and assistance are [not] furnished to units of foreign security forces.") (citation omitted); *Cox v. DOJ*, No. 1: 87-cv-158 (LFO), 1987 WL 25670, at *3 (D.D.C. Nov. 17, 1987); *Malloy v. DOJ*, 457 F. Supp. 543, 545 (D.D.C. 1978).

Additionally, the agency correctly determined that revealing the identities of these databases "could jeopardize the FBI's investigative mission by revealing exactly where the FBI is storing and obtaining valuable investigative data." Hammer Decl. ¶ 43. The agency reasonably found that "[k]nowing the database names makes the original source data an attractive target for compromise." *Id*. It also determined that release "would allow criminals who gain access to FBI systems an idea of where they can go to discover what the FBI knows, how it gathered the information, and possible information regarding the FBI's investigative strategies." *Id*. This "would also offer criminals the opportunity to corrupt or destroy information stored within these databases." *Id.*; *PEER*, 740 F3d. at 205; *Brown v. FBI*, No. 1:21-cv-1639 (RBW), 2023 WL 5333210, at *18 (D.D.C. Aug. 18, 2023) ("release of the identifiers would 'allow criminals who gain access to FBI systems insight into where they can go to discover what the FBI knows, how it gathered the information, and possible information regarding the FBI's investigative strategies[,]' and provide an 'opportunity to corrupt or destroy information stored within these databases.'"

(citation omitted)), *aff'd,* 143 F.4th 481 (D.C. Cir. 2025).

Having shown the risk to the circumvention of law, the FBI has also satisfied the foreseeable harm standard for Exemption 7(E). *See 100Reporters*, 602 F. Supp. 3d at 83 ("Although the D.C. Circuit has yet to opine on what an agency must do to show foreseeable harm under Exemption 7(E), courts have acknowledged on at least two occasions that the foreseeable-harm requirement is similar to (and was not intended to heighten) Exemption 7(E)'s 'circumvention of the law' requirement.") (citing *Citizens for Resp. & Ethics in Wash. v. DHS*, 525 F. Supp. 3d 181, 192 n.4 (D.D.C. 2021)); *Reps. Comm. for Freedom of the Press v. U.S. Cust. & Border Protec.*, 567 F. Supp. 3d 97, 128 (D.D.C. 2021) (because "an agency must show some risk of circumvention before withholding material under 7(E) … [t]he exemption's text thus already forces the agency to show some risk of harm."). Each of the harms detailed above suffice to show the foreseeable harm that would result from disclosure of this information. *See* Hammer Decl. ¶¶ 39, 41–43.

The FBI thus properly determined that release of the identities of sensitive investigative databases and database search results would impede the FBI's effectiveness and potentially aid in circumvention of valuable investigative techniques and adequately demonstrated the foreseeable harm that would result from disclosure of this information. *See id.* ¶ 44. Accordingly, the agency properly withheld this information pursuant to Exemption 7(E).

## IV. THE FBI ADEQUATELY EXPLAINED THE FORESEEABLE HARM THAT WOULD RESULT FROM DISCLOSURE OF THE WITHHELD INFORMATION

The FBI adequately explained the foreseeable harm that would result from disclosure of the withheld information.

The FOIA Improvement Act of 2016 requires that agencies "withhold information … only if … the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)[.]" 5 U.S.C. § 552(a)(8)(i)(I). The information the FBI

redacted and withheld under FOIA Exemptions 5, 6, 7(C), and 7(E) would cause harm by damaging the ability of client agencies to obtain legal advice from their attorneys; harm the privacy interests of FBI employees, witnesses, and victims; and increase the opportunities for criminals to target the FBI and its employees and to circumvent the law. *See Dhakal*, 2026 WL 787865, at *4 (foreseeable harm standard for Exemption 5 attorney-client privileged information); *Human Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 716 (D.C. Cir. 2025) (foreseeable harm standard for Exemption 6); *Ezeah v. FBI*, No. 1:24-cv-76 (TNM), 2025 WL 2377964, at *5 (D.D.C. Aug. 15, 2025) (foreseeable harm standard for Exemption 7(C); *100Reporters*, 602 F. Supp. 3d at 83 (foreseeable harm standard for Exemption 7(E)). As detailed above, the agency's declaration satisfies the limited burdens applicable in this context. *See, e.g.*, Hammer Decl. ¶ 23 (demonstrating foreseeable harm that would result from the disclosure of information protected by the attorney-client privilege); *id*. ¶¶ 31–32 (foreseeable harm that would result from the disclosure of private information of FBI employees); *id*. ¶ 34 (foreseeable harm that would result from the disclosure of private information of third parties merely mentioned in FBI investigative files); *id*. ¶ 36 (foreseeable harm that would result from the disclosure of private information of third-party victims); *id*. ¶ 39 (foreseeable harm that would result from the disclosure of internal e-mail addresses, non-public web addresses, computer banner lines, and non-public telephone numbers of FBI personnel); *id*. ¶¶ 40–43 (foreseeable harm that would result from disclosures revealing the use of FBI databases). Accordingly, the FBI has satisfied its burden of demonstrating the foreseeable harm that would result from the disclosure of these training videos.

## V. THE FBI PROPERLY CONCLUDED THAT NO PORTION OF THE RESPONSIVE RECORDS ARE REASONABLY SEGREGABLE

The FBI properly concluded that no portion of the records responsive to MSW Media's FOIA request are reasonably segregable. The FOIA provides for disclosure of "[a]ny reasonably segregable portion of a record … after deletion of the portions which are exempt[.]" 5 U.S.C.

§ 552(b); *see also id.* § 552(a)(8)(ii). However, an agency need not disclose nonexempt information that is "inextricably intertwined with exempt portions" or "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information[al] content" in order to comply with the segregation requirement. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260, 261 n.55 (D.C. Cir. 1977); *Covington v. McLeod*, No. 09-5336, 2010 WL 2930022, at *1 (D.C. Cir. July 18, 2010) (per curiam); *Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 16 (D.D.C. 2021). Nor do agencies need to create new records in order to comply with the reasonably segregable requirement. *See*, *e.g.*, *Cole v. Copan*, No. 1:19-cv-1182 (TSC), 2020 WL 7042814, at *7 (D.D.C. Nov. 30, 2020).

In this case, the FBI reasonably determined that training videos should be withheld in their entirety. *See* Hammer Decl. ¶ 45. The agency also properly determined that "[a]ny … segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, sentences, or visual images, that taken separately or together, would have minimal to no informational content." *Id*. Thus, the FBI properly withheld each record in full. The FBI's good-faith representations entitle the agency to summary judgment on this issue. *See Sussman v. U.S. Marshalls Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." (citation omitted)); *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the [affidavit] and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination." (citation omitted)).

## CONCLUSION

This Court should grant Defendant's motion for summary judgment.

Dated: October 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/ James D. Todd, Jr.*
JAMES D. TODD, JR.
Senior Trial Counsel
ISAAC C. BELFER
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
Ben Franklin Station
P.O. Box 883
Washington, DC 20044

*Attorneys for Defendant*